Daniel Henry ARNEY and Charles H.
Baker, Plaintiffs-Appellants,

v.

UNITED STATES of America et al.,
Defendants-Appellees.

No. 71–1448.

United States Court of Appeals,
Ninth Circuit.

May 11, 1973.

654

------

Richard T. Sykes (argued), Encino, Cal., for plaintiffs-appellants.

James Stotter, II, Asst. U. S. Atty. (argued), Robert E. Moore, Jr. (argued), Kirtland & Packard, David Clarke (argued), of Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for defendants-appellees.

Before CHAMBERS and CARTER, Circuit Judges, and WILLIAM B. ENRIGHT,* District Judge.

## OPINION

JAMES M. CARTER, Circuit Judge:

This is an appeal from three summary judgments granted respectively to (1) the United States of America, (2) Ray Heady, doing business as Aircraft Associates (hereafter Heady); and (3) Skyways Aircraft Ferrying Service, Inc. (hereafter Skyways) and Continental Air Services, Inc. (hereafter Continental), on the grounds that there were no material issues of fact involved.

The sole question is the propriety of the granting of the motions for summary judgment and the summary judgments thereafter entered. We reverse.

Because this case has been troublesome to us and for the assistance of the trial court on remand, we discuss the case in more detail than we ordinarily would in reversing the grant of a motion for summary judgment.

The action was brought under the admiralty jurisdiction of the district court, 28 U.S.C. § 1333(1). Appellant Arney was the pilot, and appellant Baker was the navigator of a Beechcraft Baron which crashed in the ocean on February 10, 1966, while on a flight from Oakland, California to Honolulu, Hawaii. They claim personal injuries and property damage as a result of the crash.

## FACTS

The aircraft was owned by Continental, who contracted with Skyways to ferry the plane to Vietnam. Skyways hired Arney and Baker, as independent contractors, to fly the aircraft from California to Vietnam. As originally constructed the plane had a gas tank that held 140 gallons of gas, but it was necessary to increase the fuel capacity for the long over-water flight. Skyways hired Heady to install a long-range fuel system which added 200 gallons to the aircraft's fuel capacity. Specifications for the fuel system modification were provided by Skyways. However, appellant Arney alleges that the auxiliary fuel system was vented out the bottom of the aircraft at the instance of Walter Friedman, an inspector of the Federal Aviation Agency (hereafter FAA), over Arney's objections and contrary to the general practice of venting out the top of the plane, so as to provide ram air which assists in getting all of the fuel out of the tank.

After the installation of the additional fuel system, the aircraft and its fuel system were inspected and certified by Friedman. The additional fuel-carrying facilities and navigation equipment added excess weight to the plane, bringing it above the weight for which it was flight certified by the FAA. Approval of the modifications was neces-

------

* Honorable William B. Enright, United States District Judge, Southern District of California, sitting by designation.

sary, and a special ferry permit was required for the flight under applicable FAA regulations.[1] The ferry permit, signed by Friedman for the FAA, was obtained in Long Beach, California on February 8, 1966. One of the conditions of the authorization was that "Any alteration made to this aircraft during the effective period of this permit shall invalidate this permit." Appellants knew the terms of the permit which conformed with the regulations, *supra,* note 1, and contained the restrictions deemed necessary for safe operation of the modified aircraft, including the restriction just quoted.

On February 8, 1966, appellants flew the first leg of the flight, from Long Beach to Oakland, without incident. The next day, February 9, appellants started on the second leg, from Oakland to Hawaii, but returned to Oakland because they allegedly found the fuel system to be defective.

At appellants' request, Heady sent a man, Grier, from Long Beach to Oakland to repair the aircraft. Grier repaired a radio, and made changes involving the fuel and dump lines in the auxiliary fuel system.

Appellant Arney, in his deposition, stated that he knew the system had been altered. [R. 29–30] Similarly, appellant Baker indicated that he knew that alteration required FAA re-approval. [R. 30] Other testimony of record indicated that Baker assisted Grier in making the changes to the aircraft's fuel system. [R. 40] Later, however, Arney's affidavit in opposition to the motions for summary judgment of the nongovernmental defendants indicated that

---

1. The Administrator of the Federal Aviation Agency is empowered to prescribe minimum standards of safety concerning civil aircraft, 49 U.S.C. § 1421, and to make regulations concerning the same, 49 U.S.C. § 1354. Doe v. Civil Aeronautics Board (10 Cir. 1966), 356 F.2d 699, 701.

Pursuant to this authority, the Federal Aviation Regulations, Part 91, subpart A, § 91.27 (14 C.F.R. § 91.27 (1966), sets forth the requirement for an appropriate aircraft certificate or permit:

"(a) No person *may operate* a civil aircraft *unless it has within it*—

(1) An appropriate and current airworthiness certificate (including a special flight permit . . .)." [Emphasis added]

Section 21.181(a) (14 C.F.R. 21.181(a) (1966)) states the duration of airworthiness certificates:

"Unless sooner surrendered, suspended, revoked or a termination date is otherwise established by the Administrator, an airworthiness certificate is effective as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 43 and 91 of this chapter and the aircraft is registered in the United States."

In 1968, Section 21.181(a) was amended to provide different effective periods for standard airworthiness certificates, special flight permits, experimental certificates, and the like. It now reads: "(2) A special flight permit is effective for the period of time specified in the permit."

Authority for a special flight permit, as was required for this flight, is set out in Section 21.197, "Special flight permits," (14 C.F.R. 21.197(b) (1966)), which states:

"(b) A special flight permit may also be issued to authorize the operation of an aircraft at a weight in excess of its maximum certificated takeoff weight for flight beyond the normal range over water, or over land areas where adequate landing facilities or appropriate fuel is not available."

The excess weight which may be authorized under Section 21.197(b) "is limited to the additional fuel, fuel-carrying facilities, and navigation equipment necessary for the flight." Section 21.199, which deals with the issuance of a Special flight permit, provides that the Administrator shall require that the applicant for such a permit list the ways, if any, in which the aircraft does not comply with the applicable airworthiness requirements, and the restrictions considered necessary for the safe operation of the aircraft. (14 C.F.R. 21.199(a)(5) and (6) (1966)).

Although inspections are not an absolute prerequisite to obtaining a Special flight permit, we have no doubt that once undertaken, an inspection may not be negligently made. 14 C.F.R. § 21.199(b) (1966) reads: "The Administrator *may* make, or require the applicant to make appropriate inspections or tests *necessary for safety* [on application for a special flight permit]." [Emphasis added]

he had subsequently studied fuel systems more intensively and learned that the supposed alterations Grier made to the fuel system were "insignificant" and did not constitute "alterations" sufficient to invalidate the flight permit.[2]

Without securing further FAA inspection or approval, appellants on February 10, 1966, attempted to fly from Oakland to Hawaii. The crash occurred on this flight, when the auxiliary fuel system allegedly failed to deliver all of its fuel. Arney and Baker subsequently brought this action for negligence and breach of warranty in the installation and certification of the ferry fuel system.

### Summary Judgment

In granting summary judgment for the defendants, the trial judge found that there were no genuine issues of material fact, and that Arney and Baker could not prevail as a matter of law, because they knowingly made the ill-fated flight without a valid flight permit. Although not expressly articulated by the judge in his findings of fact and conclusions of law, it appears that he must have found (1) that the alterations to the fuel system were made, and were significant enough to invalidate the permit; and (2) that under applicable law, flying without a valid permit constituted contributory negligence, barring recovery by Arney and Baker under any state of the facts supportable by the record.

None of the parties cited any authority, and we are aware of none, which establishes negligence per se under the Act and regulations set out, *supra*, note 1. Before we could affirm the judge's ruling that plaintiffs were contributorily negligent as a matter of law, we must consider, apparently in a case of first impression, whether violation of these regulations would constitute negligence per se, if a defendant had violated them,

and hence that such violation is contributory negligence when allegedly violated by plaintiffs herein.

"The accepted rule now is that a breach of statute by plaintiff is to stand on the same footing as a violation by defendant.

. . . . . .

"[I]t seems clear that safety statutes . . . usually are designed for the broad purpose of preventing accidents or dangerous situations, . . . in which the plaintiff is quite as likely to be hurt as the defendant; and it is not difficult to discover a purpose to protect him by setting up a standard of his own conduct, the unexcused violation of which is negligence in itself." Prosser, Torts, ch. 5, § 35, pp. 204–05 (3d ed. 1964); see Illinois Central R. Co. v. Messina, 240 U.S. 395, 36 S.Ct. 368, 60 L.Ed. 709 (1916).

Under California law, which applies here, negligence per se creates a rebuttable presumption only, and is not conclusive upon the trier of fact. Alarid v. Vanier, 50 Cal.2d 617, 327 P.2d 897 (1958). In overcoming that presumption, the "test is whether the person who violated the statute has sustained the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law." *Id.*, 50 Cal.2d at 624, 327 P.2d at 900.

"The violation of a statute . . . is negligence per se only if the person injured or damaged is within the class intended to be protected by the statute . . . . Violation of a statute intended to protect the interest of the state, or of the community at large, rather than that of any particular individual or class, is not negligence per

2. Arney said in his affidavit, in part:
"I, in no way, instructed Mr. William Grier in any change of the fuel system. Mr. Grier presented himself to me after the fuel system had failed. He represented that he came from Ray Heady,

dba Aircraft Associates. I relied upon him as some sort of expert. At that time, I did not know as much about fuel systems as I do now. Mr. Grier made some very insignificant changes in the fuel system."

se." 35 Cal.Jur.2d, Negligence, § 18, at 504–06 (1957).

The resulting harm must be of the nature that the statute was designed to prevent, and the violation must be the proximate cause of the injury. *Id.*, §§ 19–20, at 507–08; *Prosser, supra,* at 194–98.

These general principles apply to our case. The Civil Aeronautics Act, the predecessor to the Federal Aviation Act of 1958,[3] was enacted, and regulations promulgated thereunder, to promote civil aviation while assuring maximum safety in the air. Rosenhan v. United States (10 Cir. 1942), 131 F.2d 932, 934, cert. denied, 318 U.S. 790, 63 S.Ct. 993, 87 L.Ed. 1156. The 1958 Act had the same purposes. 1958 U.S.Code Cong. & Adm.News, p. 3741. The purpose of the certification of aircraft under the 1958 Act and regulations was to reduce accidents, and the government may be liable for negligence in improper issuance of a type airworthiness certificate. Rapp v. Eastern Air Lines, Inc. (E.D.Pa.1967), 264 F.Supp. 673, 676, 680, aff'd sub nom., Scott v. Eastern Air Lines, Inc. (3 Cir. 1968), 399 F.2d 14, cert. denied, 393 U.S. 979, 89 S.Ct. 446, 21 L.Ed.2d 439. The certificate is valid only so long as the plane is kept in repair, and it has been held that it is the pilot's duty to see that the plane is so maintained. Gibbs v. United States (E. D.Tenn.1965), 251 F.Supp. 391, 396.

The safety of pilots and others aboard aircraft, as well as persons on the ground, depends upon the airworthiness certification program under the Act. We hold that the appellants, Arney and Baker, were within the class intended to be protected by the regulations and that the alleged harm suffered was of the kind which the regulations were intended, in general, to prevent. The accident which occurred was exactly the sort of risk that might reasonably be anticipated to flow from violation of the Act and the regulations promulgated thereunder. Therefore, if there was an alteration in the Beechcraft Baron aircraft sufficient to invalidate the flight permit, a subsequent flight under that invalid permit could constitute contributory negligence per se, provided, of course, that proximate cause existed.

Summary judgment is inappropriate in this case because of at least the following fact questions: (1) was the ferry fuel system defective as originally constructed; (2) was Friedman, acting for the FAA, negligent in granting approval of the system; (3) did Friedman cause changes to be made which rendered the fuel system defective; (4) what are the details and technical significance of the changes Grier allegedly made to the system; (5) were Grier's changes material or insignificant as to the cause of the accident; (6) did those changes constitute alterations sufficient to invalidate the permit; and (7) what was the proximate cause of the accident?

Arney says in his affidavit opposing summary judgment that the changes made by Grier "were insignificant and did not amount to any kind of an 'alteration' of the system." Appellees, on the other hand, rest upon what they claim to be undisputed evidence that alterations were made. They rely upon the following statement, for example, in Arney's declaration under penalty of perjury:[4]

3. Chapter 20 in 49 U.S.C. comprises Sections 1321 through 1542 and is there entitled "Federal Aviation Program."

The short title of the Act (Pub.L. 85–726, Aug. 23, 1958, 72 Stat. 737) is "Federal Aviation Act of 1958." The Act includes Sections 1321–1542 referred to above, and also amends and repeals various other statutes. See note following 49 U.S.C. § 1321.

4. There are no provisions in the Federal Rules of Civil Procedure for the state practice of filing "declarations under penalty of perjury" in lieu of affidavits. See Fed.R.Civ.P., Rule 56(e); Calif.Code Civ.Proc. § 2015.5.

Appellants filed affidavits in resisting the motions for summary judgment made by the nongovernmental appellees. But as to the motion of the United States,

"The alteration made by the mechanic [Grier] was to take the dump line and attach it to the feed line so that there would be an additional feed source. . . . In my opinion and in the opinions of the [experts] I have talked to the change made by the mechanic was of no significance in the operation of this fuel system. The fuel system failed as it was in it's un-modified [sic] condition."

(Of course, we neither approve nor consider the inadmissible hearsay contained in this statement.)

Insofar as the mere fact of the change in fuel lines might be taken as an admission by Arney that there was an "alteration" which invalidated the permit by its terms, the point is without merit. Whether the alteration invalidated the permit, and whether that would bar appellants' recovery herein, are questions of law to be determined after the extent and mechanical significance of the alterations have been factually found. Appellees have pointed to no authority of the FAA to withhold or invalidate permits for insubstantial or immaterial alterations unrelated to airworthiness or not affecting the safety of aircraft operations. Appellants' citation below of Brown, Airman Certificate, 1 C.A.A. 666 (1940) is irrelevant. Thus Arney and others may have thought that the permit was invalid under the FAA's definition of invalidity, but that definition may have been unreasonable as a matter of law.

Nowhere in the record do we have, nor so far as we can tell did the trial judge have, any technical explication of the impact of the mechanic's action upon the fuel system, and hence the airworthiness of the aircraft,[5] except Arney's statement as an experienced ferry pilot and licensed airframe and power plant mechanic. We would find it incredible to cut off appellees' liability, if they were negligent so as to cause this crash, merely because of an insignificant change not affecting the overall airworthiness of the plane.

The trial judge's findings of fact are of little assistance here, because couched in very indefinite terms such as " . . . certain alterations in the installation of the fuel lines leading to the ferry tank." [Finding of Fact No. 6] If the change were shown to be immaterial it would not give rise to the claimed presumption of contributory negligence. Alarid v. Vanier, *supra*. We hold that the permit was not invalidated unless any alteration in the aircraft was substantial and material to the airworthiness thereof, considered in the light of the safety purpose of the Act. A merely trivial change could not be said to "alter the aircraft" within the language of the ferry permit.

If the original fuel system was negligently installed and certified, it is certainly possible that it would have failed regardless of what Grier may have done to it. Thus any alteration may have been causally unconnected with the crash. See *Prosser, supra,* at p. 195. We cannot on this record hold that there is no "reasonable indication that a material fact is in dispute." Aetna Ins. Co. v. Cooper Wells & Co. (6 Cir. 1956), 234 F.2d 342, 344. Doubts about such factual issues must be resolved against the movant for summary judg-

which was first in time, only a declaration was filed.

Because the issue was not raised below nor in the briefs here, and the United States treated the declaration as an affidavit, we only note the problem.

5. The government produced the affidavit of its expert, Stephen H. Rolle, which stated that it was based on a review of the record herein, and specifically Arney's statements. Rolle concluded that the alterations were material and not trivial, and that the fuel system should have been further tested. However, neither Rolle nor Arney offered any detailed technical basis for their conclusions. At best, only a dispute of fact is raised by Rolle's affidavit, when compared with Arney's testimony mentioned in text. *See* note 2, *supra*.

ment. Cameron v. Vancouver Plywood Corp. (9 Cir. 1959), 266 F.2d 535, 540.

Moreover, it is alleged that the government inspector, Friedman, insisted upon venting the ferry fuel system out the bottom of the aircraft, rather than out the top so as to provide ram air to the fuel tank. It appears that this was done over Arney's objections, at the time the system was originally certified by Friedman, although the government disputes this.

> "The question of defendant's liability cannot be lawfully withdrawn from the jury and determined by the court unless the facts are not only undisputed but are also such that all reasonable men, in the exercise of fair and impartial judgment, must draw the inference and conclusion therefrom of non-negligence. . . . *Issues of negligence are ordinarily not susceptible of summary adjudication.*" Roucher v. Traders & General Ins. Co. (5 Cir. 1956), 235 F.2d 423, 424 (emphasis added).

 Although no jury demand was made herein, the *Roucher* standard is appropriate. It is axiomatic under Fed.R.Civ.P., Rule 56, that the presence of a triable issue of material fact is a bar to summary judgment. We believe that summary judgment is inappropriate in this case, even though appellants' factual showing leaves something to be desired in both quality and quantity.

There would be no triable fact issue if appellees' version of the facts were not contradicted in the showing made by appellants. Morrison v. Walker (9 Cir. 1968), 404 F.2d 1046 (per curiam). Here we have the unusual situation in which appellees largely rely on appellants' depositions and affidavits, which are themselves unclear on the facts. For purposes of this appeal, we resolve the doubts in favor of appellants. *Cameron, supra.* We also hold that appellants' factual showing was sufficient to raise, if weakly, a triable issue of material fact on the question of alteration.

 Our conclusion is reinforced by the California rule that negligence per se creates only a rebuttable presumption of negligence. Alarid v. Vanier, *supra.* Thus, even were violation of the certification regulations assumed, appellants would be entitled to present evidence that they acted as would a person of reasonable prudence under the circumstances, who desired to comply with the law. *Id.* The facts of record indicate that appellee Heady, and Mr. Taylor of Skyways, may have told Arney that the certificate was legal, or at least that Heady would see that it was properly taken care of. Arney's affidavit states that he made it a condition of proceeding past Hawaii, that he receive telegraphic confirmation of the legality of the permit.[6] Nothing of record indicates that Arney's act in so proceeding was conclusively imprudent, and thus, at least in this respect, appellees failed to carry their burden of proof in support of the motion for summary judgment.

Appellees urge that even if appellants were not contributorily negligent per se, they were guilty of contributory negligence in continuing to fly the plane after having had fuel system problems. Thus, if Arney knew the alterations were insignificant, it is urged that he also knew that the erratic fuel supply had not been repaired. However, Arney's statement, quoted *supra,* note 2, claims that Arney relied on Grier to be an expert in fixing the fuel system problems; at that time, Arney alleges, he did not know as much

---

6. Arney's affidavit relates, in part:
 "Additionally, I had conversations with Mr. Ray Heady, of Aircraft Associates and Mr. Taylor, of Skyways Ferrying Service, and they indicated to me that they would make the arrangements to make any necessary changes in the ferry permit because of what Mr. Grier, Mr. Heady's mechanic, had done to the fuel system. I relied upon these statements and attempted to fly that airplane across the ocean. I made it a condition of proceeding beyond Honolulu that I would have some kind of a telegraphic reply indicating that the ferry permit was perfectly legal."

about fuel systems as he now does. This aspect of the case, then, merely raises another fact question supporting our reversal of summary judgment.

Appellant Arney, in his second affidavit, attempted on his own assertion to qualify himself as an expert in ferry fuel systems. As an expert he stated that Grier's alterations (which Arney observed when they were made) were immaterial, and that the original ferry fuel system was negligently constructed. We are not prepared to say that such statements, in an affidavit opposing summary judgment, are the sort of evidence which a court can always credit. See Fed.R.Civ.P., Rule 56(e). However, neither are we prepared to hold, as a matter of law, that an experienced ferry pilot and mechanic cannot render an expert opinion, or a qualified lay opinion as the case may be, on subject matter so closely related to his usual occupation as a ferry pilot. Hence, we resolve the question against appellees, and we leave that determination to the trial judge, on remand, should the question again arise.

In addition to the defense of a genuine dispute of material fact, to successfully resist summary judgment, there must be at least one viable theory of law under the asserted version of the facts that would, if true, entitle the opponent of the motion to judgment as a matter of law. McGuire v. Columbia Broadcasting System, Inc. (9 Cir. 1968), 399 F.2d 902, 905; Bushie v. Stenocord Corp. (9 Cir. 1972), 460 F.2d 116, 119. Appellants' complaint states a cause of action against the government, for negligent certification of the original ferry fuel system. See Rapp v. Eastern Air Lines, Inc., *supra,* 264 F.Supp. at 680–681.

As to the appellees other than the government, the complaint states a cause of action for negligence under appellants' version of the facts, and thus, again, we need not comment upon the other theories alleged. Finally, we of course do not express any opinion upon the merits or the final outcome of this matter, leaving the issues of negligence, breach of warranty, and contributory negligence, among others, to the court below.

The judgment is reversed, and the cause is remanded to the district court for further proceedings not inconsistent with this opinion.