In re Thomas D. CARTER and Diana
M. Carter, dba the Carter
Company, Debtors.

SECURITIES AND EXCHANGE
COMMISSION, Plaintiff,

v.

Curtis B. DANNING and James J.
Joseph, Co-Trustees, Defendants.

Bankruptcy No. SA 83–05415–RP.
Adv. Nos. 84–0476, 84–0480.

United States Bankruptcy Court,
C.D. California.

Nov. 26, 1985.

**544**

Theodore B. Stolman of Stutman, Treister & Glatt, Los Angeles, Cal., for trustee.

James A. Shalvoy, Los Angeles, Cal., for Sec. & Exchange Com'n.

Bruce Emard of Rutan & Tucker, Costa Mesa, Cal., for Creditors' Committee.

FINDINGS OF FACT AND CONCLUSIONS OF LAW RE SEC'S SUMMARY JUDGMENT MOTION AND CO-TRUSTEES' MOTION THAT FUNDS HELD BY CO-TRUSTEES ARE PROPERTY OF THE DEBTORS' ESTATE

*Hearing*

RALPH G. PAGTER, Bankruptcy Judge.

On September 9, 1985 the Securities and Exchange Commission's ("Commission") "Motion for Summary Judgment" ("Summary Judgment Motion") in the above-captioned adversary proceedings and the "Co-Trustees' Motion for Order Determining That Funds Held By The Co-Trustees Are Property Of The Debtors' Estate" ("Co-Trustees' Motion") came on for hearing before the undersigned United States Bankruptcy Judge in the above-captioned Court. Theodore B. Stolman and Michael H. Goldstein appeared on behalf of the Co-Trustees; James A. Shalvoy appeared on behalf of the Commission; and Bruce Emard appeared on behalf of the Creditors' Committee.

Having considered the pleadings and accompanying declarations filed, the arguments and representations of counsel, all pleadings and documents in this bankruptcy case and these adversary proceedings, and this Court's "Memorandum Opinion Granting Co-Trustees' Motion for Order Determining Nature of Funds, Denying The Motion Of The SEC For Summary Judgment and Granting Summary Judgment To The Co-Defendant Trustees," the Court herein sets forth its "Findings of Fact and Conclusions of Law Re SEC's Summary Judgment Motion and Co-Trustees' Motion That Funds Held by Co-Trustees are Property of Debtors' Estate." The Court's Findings of Fact and Conclusions of Law herein apply to the Commission's Summary Judgment Motion and the Co-Trustees' Motion.

### FINDINGS OF FACT

1. This Court has jurisdiction over these adversary proceedings pursuant to 28 U.S.C. § 1471; Section 404 of Public Law 95–598; Local Rules governing Bankruptcy proceedings of the United States District Court, Central District of California, dated December 27, 1982; 11 U.S.C. § 541(d); 11 U.S.C. § 105; 11 U.S.C. § 103(a); and Bankruptcy Rule 7001.

2. Plaintiff Commission is a governmental agency of the United States expressly charged, *inter alia*, with enforcement of the provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Company Act of 1940 and is vested with the power to bring civil actions in any district court of the United States to enjoin violations thereof and make requests for and prosecute ancillary relief for the benefit of public investors in such actions.

3. On November 25, 1983, the Commission filed a Complaint for Injunction and Other Equitable Relief in the United States District Court for the Central District of California against Thomas D. Carter ("Carter"), individually and doing business as "The Carter Company" ("Carter Company"), and Tom Carter Enterprises, Inc. ("Tom Carter Enterprises"), among others (collectively "Carter entities").

4. The Commission's Complaint alleged violations by the Carter entities of the antifraud and registration provisions of the federal securities laws.

5. Based on evidence submitted by the Commission, the district court granted a temporary restraining order and froze all of the assets of the defendants, including $4,664,413.65 contained in various Carter controlled bank accounts.

6. Shortly thereafter, the Carter entities filed in this Court voluntary petitions

for reorganization under Chapter 11 of the Bankruptcy Code ("Code").

7. Each of the debtors consented to the appointment of defendants Curtis B. Canning ("Danning") and James J. Joseph ("Joseph") as Co-Trustees.

8. The trustees demanded that the Commission turn over to them the $4,664,-413.65, asserting that it constituted property of the debtors' estates.

9. The Commission took the position that the funds belonged to defrauded public investors in the fictitious Carter medical factoring business and should be the subject of a constructive trust in their favor.

10. The Commission entered into a stipulation with the trustees which conditionally released to the trustees the $4,664,-413.65.

11. The stipulation was ordered implemented by the district court on March 12, 1984.

12. Pursuant to the terms of the stipulation, the trustees took possession of the funds without prejudice to the rights of any person to impose a constructive trust on all or some of the $4,664,413.65.

13. The trustees agreed to segregate the money, to direct their accountants to prepare an analysis tracing the source of the funds within 90 days of the district court's order, and to petition this Court for instructions regarding distribution of the funds.

14. At the request of the trustees, the time in which to complete the analysis was extended to August 15, 1984.

15. The trustees request for an additional two-month extension in which to complete the analysis was not agreed to by the Commission.

16. By letter dated October 23, 1984, Joseph forwarded to the Commission the accountant's analysis of the bank accounts.

17. The accountants' analysis has been filed with this Court and is attached as Exhibit 3 to the Commission's Summary Judgment Motion.

18. The trustees filed their Motion for Order Determining That Funds Held by Co-Trustees Are Property of the Debtors' Estate" on or about August 9, 1985.

19. Notice of the Co-Trustees' Motion was given to all creditors of the debtors herein.

20. Tom Carter Enterprises was incorporated in the State of California in 1981 and was located at the same address as the Carter Company.

21. Carter was president and a shareholder of Tom Carter Enterprises.

22. Concept 80 is an entity with offices located in Anaheim, California.

23. Funds in five separate accounts, totalling $4,664,413.65, were transferred to defendants pursuant to the stipulation entered into between defendants and plaintiff.

24. All monies taken in by the Carter entities were deposited into account 117, the "master account."

25. Payments from account 117 were made exclusively to account 118, the "disbursing account."

26. Payments from account 118 were made variously to investors, Carter controlled entities, account 115 (Tom Carter Enterprises general purpose account), and account 116 (Tom Carter Enterprises payroll account).

27. Although the $4,664,413.65 represents money received from investors, no individual investor's money can be specifically traced to the $4,664,413.65 except for the approximate $64,000 which was on hand in account 117 at the time Carter's bank accounts were frozen.

28. The Carter Company books and records contained no payments, receipts, or billings whatsoever from or to any doctor, medical group, or insurance company which indicated the existence of any medical factoring business.

29. There were no corporate ledgers contained in the Carter entities' business records.

30. Carter Company maintained no books that are normally used by a business.

31. The only documents in Carter Company's books and records relating to a medical factoring business were medical factoring agreements between investors and Carter Company.

32. There was no correspondence between any of the Carter entities and any insurance companies with respect to medical factoring agreements.

33. There was no documentation or correspondence between the Carter entities and any doctors regarding any medical factoring.

34. There were no disbursements from any of the Carter bank accounts to any medical factoring business or any health insurance corporation.

35. There was no documentation at all regarding any business activities by the Carter entities.

36. Any Finding of Fact which should be deemed a Conclusion of Law is hereby adopted as such.

## CONCLUSIONS OF LAW

■ 1. Hearsay and speculative testimony do not constitute evidence upon which a motion for summary judgment may be granted, particularly where all factual ambiguities must be decided in favor of the responding party. *Arney v. United States,* 479 F.2d 653, 659 (9th Cir.1973). A substantial number of the documents submitted in support of the motion of the Commission for summary judgment constituted hearsay and other speculative testimony.

2. The existence of disputed genuine issues of material fact precludes granting summary judgment in favor of the Commission. *In re Airport Car Rental Anti-Trust Litigation,* 766 F.2d 1292 (9th Cir. 1985); *Cardwell v. Kurtz,* 765 F.2d 776 (9th Cir.1985); *Daily Herald Co. v. Munro,* 747 F.2d 1251, 1255 (9th Cir.1984); *Jewel Companies v. Payless Drug Stores North-* *west,* 741 F.2d 1555, 1559 (9th Cir.1984); Fed.R.Civ.P. 56(c).

3. There exist genuine issues of dispute as to the following:

A. What representations were made to each investor creditor respecting a medical factoring business being carried on by Carter.

B. Whether the representations that were made to each investor creditor respecting Carter's medical factoring business were false.

C. Whether the representations that were made to each investor creditor respecting Carter's medical factoring business were made by Carter or other third parties.

D. Whether Carter had knowledge that any false representations were made to investor creditors respecting his medical factoring business and whether Carter intended investors to rely on such false representations.

E. Whether each investor creditor relied on false representations made by Carter respecting his medical factoring business.

F. Whether each investor creditor justifiably relied on false representations made by Carter respecting his medical factoring business.

G. Whether each investor creditor was damaged by his justifiable reliance on false representations made by Carter respecting his medical factoring business.

H. Whether the investment instruments which were issued to investors are securities within the meaning of Bankruptcy Code § 101(40).

I. Whether the Commission's action to impose a constructive trust on the funds is a claim arising out of the rescission of the purchase or sale of a security within the meaning of Bankruptcy Code § 510(b).

J. Whether any investor creditors are parties to agreements with Carter or third parties which are in violation of California's usury laws.

K.  Whether any investor creditors have already received payments from Carter that exceed their initial investment.

L.  Whether the investor creditors have unclean hands such that they are not entitled to the equitable remedy of a constructive trust.

M.  Whether the imposition of a constructive trust would be inequitable to the investor creditors on whose behalf the constructive trust would be imposed as well as other creditors.

N.  Whether there would be any dilution of the bankruptcy dividend to investor creditors if the funds were included within the property of the debtors' estates.

O.  Whether investor creditors who liquidated their accounts prior to the commencement of the debtors' bankruptcy would receive a windfall from a determination that the funds are not property of the estate.

4.  Under federal bankruptcy law all creditors of the debtors are to be treated equally.  *Cunningham v. Brown,* 265 U.S. 1, 13, 44 S.Ct. 424, 427, 68 L.Ed. 873 (1924); *In re North American Coin & Currency Ltd.,* 767 F.2d 1573, 1577–1578 (9th Cir.1985).

5.  The claims of the investor creditors cannot be elevated above those of other general creditors by the imposition of a constructive trust.  11 U.S.C. § 510(b); *In re Flight Transp. Corp. Securities Litigation,* 730 F.2d 1128, 1137 (8th Cir.1984).

6.  Imposition of a constructive trust in bankruptcy must be consistent with bankruptcy policy of treating general creditors equally.  *In re North American Coin & Currency Ltd.,* 767 F.2d 1573, 1575, 1577–1578 (9th Cir.1985).

7.  The Commission has not met its burden of tracing any individual investor's money to the funds held by the Co-Trustees.  The inability to trace an individual investor's investment to the fund held by the Co-Trustees prohibits imposition of a constructive trust.  *In re Kennedy & Cohen, Inc.,* 612 F.2d 963, 966, *cert. denied,* 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38 (1980); *In re First Fidelity Financial Services, Inc.,* 36 B.R. 508, 514 (Bankr.S.D.Fla. 1983); *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp.,* 19 B.R. 609, 613 (Bankr.W.D.Ky.1982).

8.  A constructive trust cognizable under state law will not automatically be recognized under federal bankruptcy law where the effect would violate the spirit and intent of the Bankruptcy Code to treat creditors equally.  *In re North American Coin & Currency Ltd.,* 767 F.2d 1573, 1575, 1577–1578 (9th Cir.1985).  Thus, even if the Commission could satisfy the elements to establish a constructive trust under state law, imposition of a constructive trust herein would violate the policy of the Bankruptcy Code.

9.  As there are genuine issues of fact in dispute, no investor's money can be traced to the funds held by the Co-Trustees and imposition of a constructive trust would defeat the purposes of the Bankruptcy Code, the Commission's Motion for Summary Judgment is denied.

10.  "[I]f one party moves for summary judgment and, at the hearing, it is made to appear from all the records, files, affidavits and documents presented that there is no genuine dispute respecting a material fact essential to the proof of movant's case and that the case cannot be proved if a trial should be held, the court may *sua spante* grant summary judgment to the non-moving party."  *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982).  As the Commission cannot prevail at trial, summary judgment is granted in favor of the Co-Trustees.

11.  As the policies of the Bankruptcy Code would best be served by including the funds held by the Co-Trustees within the estate of the debtors herein, the Co-Trustees' Motion For Order Determining That Funds Held by Co-Trustees Are Property of the Debtors' Estate is granted in its entirety.

12. Notice given of the Co-Trustees' Motion was appropriate and adequate given the particular circumstances.

13. Any Conclusion of Law hereinabove recited which should be deemed a Finding of Fact and is found to be true in all respects is hereby adopted as such.