**Chad M. KOPPIE, Plaintiff,**

v.

**James B. BUSEY, Administrator, Federal Aviation Administration, an agency of the United States of America, Defendant.**

**Civ. No. F89–282.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Aug. 4, 1992.

Dean E. Richards, Donald Clementson–Mohr, Indianapolis, IN, for plaintiff.

Robert N. Trgovich, Asst. U.S. Atty., Fort Wayne, IN, Robert A.K. Doehl, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, for defendant.

---

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on the defendant's, Federal Aviation Administration's, Motion for Summary Judgment. The defendant has filed a memorandum in support of its motion, and the plaintiff has filed an answer brief. In addition, the defendant has filed a reply brief with the court. For the reasons set forth below, the defendant's motion will be GRANTED.

### Factual Background

The plaintiff, Chad M. Koppie, brought suit against the defendant, the Federal Aviation Administration (FAA), James Busey, administrator, and a second defendant, Ligon "Air," on December 28, 1989. The plaintiff alleged, *inter alia*, that the FAA's failure to issue a certificate of registration to the plaintiff in regard to his claim to a Convair 880 aircraft, Model CV880–22M, Registration N88CH, amounted to a tortious conversion of the aircraft causing the plaintiff to suffer damage in the amount of $667,000.00.[1] Kop-

---

1. The plaintiff's complaint sets forth the following allegations:

   16. That the Federal Aviation Administration's failure to issue a Certificate of Aircraft Registration to the Plaintiff herein did cause damage and loss of said aircraft and loss of ownership of said aircraft causing Plaintiff damages in the amount of Six Hundred Sixty-seven Thousand Dollars ($667,000.00).

   18. The Plaintiff, Chad M. Koppie, met the standard as set forth in said Statutes and Regulations and had a legal right to said Certificate of Registration. And further, that the Federal Aviation Administration did commit a wrong-

pie allegedly purchased the aircraft from Hudson General Corporation on February 11, 1987 for $5,000.00. Hudson General allegedly obtained an interest in the plane as a result of a foreclosure under the lien laws of New York to secure payment of monies owed to Hudson General by Ligon "Air" for the storage and maintenance of the plane.

Subsequently, a dispute arose as to the ownership of the Convair. On June 23, 1987, Koppie received a letter from the FAA informing him that the FAA could not issue a certificate of registration to him because the documents they had before them indicated that the aircraft had been repossessed and subsequently sold. The letter stated in part that:

> Review of the aircraft file indicates it was repossessed May 23, 1987, premised upon a security agreement, which was recorded by FAA on July 9, 1982, and subsequently sold to Ligon Air, 105 West 2nd St., Ligonier, IN 46767. In view of the repossession and subsequent sale, we are unable to issue a certificate of aircraft registration in your name at this time. Koppie Dep. Exhibit 23.

The FAA determined that Koppie took his interest subject to the recorded interest of Cromwell State Bank, the original lienholder. The record subsequently stated that Cromwell had assigned its interest to "880 Partnership," which repossessed the airplane from Ligon "Air" and then sold it back to Ligon "Air." Both "880 Partnership" and Ligon "Air" were owned by the same persons, Susan and Cliff Pettit.

In late June or early July, Koppie visited the airport where the Convair was being stored and discovered that Michael Potter was performing repairs on the aircraft. Koppie assumed Potter to be an agent for Ligon "Air." On July 7, 1987, with knowledge of the competing claims to the aircraft and the fact that the plane was about to be flown to South Africa, Koppie executed a release in two documents of any and all interest he may have had in the Convair.[2]

On July 15, 1987, the plane was flown to South Africa,[3] and on or about March 7, 1988, Koppie received the $36,000.00. On May 16, 1991, the day before Koppie's deposition, Koppie and Potter executed a "Memorandum of Understanding" which purported to nullify the July 7, 1987 agreement.[4] In that agree-

---

ful act and did commit negligence by failure to issue said license.
Plaintiff's Amended Complaint at ¶¶ 16, 18.

2. The first document, Exhibit 26 to Koppie's deposition states:

> As per written contract, I have released any and all interest in said aircraft, Convair 880 N88CH, serial Number 58 to P and M Aircraft for the purpose of delivering said aircraft from Islip–MacArthur Long Island, N.Y. Airport to Bisho International Airport, Babe, South Africa.

The second document, Exhibit 27 to Koppie's deposition, states:

> Pursuant to an agreement between Western Continental Holdings Limited, represented by L.M. Kempster and Chad N. Koppie whereby Chad N. Koppie agrees to waive any claim he may have for or in aircraft Convair 880 N88CH, for an amount of U.S.D. 36000 (Thirty Six Thousand dollars), to be settled out of the proceeds of Letter of Credit No. 87070318550 J 0105—Standard Chartered Bank, 130 Water Street, New York in favour of P and M Aircraft Company.
> It is agreed that the funds will be paid to Chad N. Koppie within 24 hours of transfer of the funds to P and M Aircraft Company, represented by Mr. Mike L. Potter, and that this transfer

shall take place within 21 days of the aircraft leaving McArthur Airport.

3. Apparently, Ligon "Air" sold the 880 Convair to Western Continental Holdings Ltd. on or before June 25, 1987, and Western Continental then arranged the sale to the South African government.

4. The May 16, 1991 Agreement stated the following:

> COMES NOW Western Continental Holdings, Ltd. and Michael L. Potter, and further comes Chad N. Koppie, and enters into the following Memorandum of Understanding previously agreed to by the parties orally.
> 1. For the consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, that Western Continental Holdings, Ltd., and Michael L. Potter, hereby declare null and void any and all agreements by and between the parties hereto relative to said Convair 880 Aircraft, Serial No. 58. That more specifically, Western Continental Holdings, Ltd., and Michael L. Potter acknowledge that they do not have any interest what so kind or nature in said Convair 880 Aircraft.
> 2. Further, said Chad N. Koppie has kept in escrow, a certain $36,000.00 paid to Koppie in 1988 and it is further agreed that Koppie

ment, Western Continental Holdings and Potter acknowledged that they had no interest in the plane. The $36,000.00 paid to Koppie pursuant to the initial agreements was to be kept in escrow so that if Koppie obtained a judgment against the FAA, "880 Partnership," or Ligon "Air" in excess of $75,000.00, the $36,000.00 would be given back to Potter.

This court granted summary judgment to the defendant, Ligon "Air," on December 11, 1991, based upon its findings that the documents signed on July 7, 1987 constituted a full release of Koppie's interest (whatever that may have been) in the Convair. Therefore, since he had no legal interest in the plane, Koppie did not have any basis for his claim for damages.

### Discussion

In its motion for summary judgment, filed on March 3, 1992, the defendant cited three bases for granting summary judgment: (1) that certificates of registration issued by the FAA do not create or extinguish property rights, therefore, the FAA could not have tortiously converted any of Mr. Koppie's alleged property rights in the aircraft; (2) that the FAA's decisions as to the registration of aircraft fall under the discretionary exception of the Federal Tort Claims Act, and therefore, this court has no jurisdiction to hear this claim; and (3) that the plaintiff is collaterally estopped from bringing a suit of tortious conversion since this court, in granting defendant Ligon "Air" 's motion for summary judgment, has already decided that Koppie had no interest that could be converted. The court has found that each of these constitute an independent basis upon which to grant the defendant's Motion for Summary Judgment, and will address each in turn.

### Summary Judgment Standard

■■■ Summary judgment is proper "if the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago,* 916 F.2d 1254, 1256 (7th Cir.1990). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the nonmoving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.,* 477 U.S. at 251, 106 S.Ct. at 2512; *In Re Matter of Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Twp. High School Dist. No. 204,* 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322 (7th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)).

will not proceeding [*sic*] any way against Michael L. Potter or Western Continental Holdings, Ltd., relative to said aircraft, but reserves the right to pursue any and other claims that he may have against third parties relative to said Convair 880 Aircraft.

3. It is further understood and agreed that Chad N. Koppie will return said $36,000.00

escrow monies to Michael L. Potter and/or Western Continental Holdings, Ltd., if he is successful in obtaining a Judgment against either the FAA or Ligon "Air" or "880 Partnership," and further, is successful in collecting said judgment in amount over $75,000.00.
Koppie Dep. Exhibit 34.

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.* 477 U.S. at 247, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355; *First Nat'l Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

### 1. *Effect of FAA Registration on Title*

The plaintiff, in replying to the defendant's motion, does not attempt to contest the defendant's argument that, because title registration of aircraft does not create or extinguish any property rights, actions by the FAA in either denying to register or in registering any aircraft cannot form the basis for a suit for conversion. The plaintiff merely argues that the FAA was negligent in making the determination that Ligon "Air" had a superior interest in the aircraft. This has nothing to do with the legal effect of the FAA issuing a certificate of registration to Ligon "Air." Even assuming that Koppie should have been registered as the owner of the Convair, registration of the aircraft to Ligon "Air" did not, and cannot, as a matter of law, amount to conversion of any alleged property rights Koppie may have had in the plane.

Under 49 U.S.C.App. § 1401, the purpose of registering an aircraft is to define its nationality for international purposes. The statute goes on to state that

> Such certificate shall be conclusive evidence of nationality for international purposes, but not in any proceeding under the laws of the United States. *Registration shall not be evidence of ownership of aircraft in any proceeding in which ownership by a particular person is, or may be, an issue.* 49 U.S.C.App. § 1401(f) (emphasis added).

> The FAA does not issue any certificate of ownership or endorse any information with respect to ownership on a Certificate of Aircraft Registration. 14 CFR § 47.5(c).

The plain language of the statute states that registration does not control questions of title. *Northwestern Flyers, Inc. v. Olson Bros. Mfg. Co., Inc.*, 679 F.2d 1264 (8th Cir. 1982).

Under 49 U.S.C.App. § 1403, the FAA is required to maintain a system for recording interests in aircraft or aircraft engines for the purpose of creating a "central clearing house for recordation of titles" so a person would be able to find information on the legal interests affecting a particular aircraft. *Aircraft Trading and Services Inc. v. Braniff, Inc.*, 819 F.2d 1227, 1231 (2d Cir.), *cert. denied sub nom., Condren v. Aircraft Trading and Services, Inc.*, 484 U.S. 856, 108

S.Ct. 163, 98 L.Ed.2d 118 (1987) (*quoting Philko Aviation, Inc. v. Shacket,* 462 U.S. 406, 411, 103 S.Ct. 2476, 2479, 76 L.Ed.2d 678 (1983)). However, while this act is controlling over state law as to the manner in which conveyances and encumbrances are to be recorded, *Catlin Aviation Co. v. Equilease Corp.,* 626 P.2d 857 (Okla.1981), it does not displace state law assignment of priorities to interests in aircraft. *Matter of Gary Aircraft Corp.,* 681 F.2d 365, 372 (5th Cir.1982), *cert. denied sub nom., General Dynamics Corp. v. Gary Aircraft Corp.,* 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1366 (1983). Under this act, the FAA merely records documents which, under state law, may create title rights. The FAA does not issue certificates of title.

Given the language and purposes of the act, as interpreted by the courts, the FAA's action regarding the registration or recordation of any purported interest Koppie had in the plane does not, and cannot, as a matter of law, affect any claim Koppie may have had under state law in determining priority of title. Koppie, therefore has failed to establish any link between the FAA's actions and any damages he claims to have suffered. His claim must therefore fail.

### 2. *Discretionary Function Exception to the Federal Tort Claims Act*

■ The defendant has argued that the FAA's actions which the plaintiff is contesting fall under the discretionary function exception to the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2680(a).[5] Therefore, since the government has not waived its sovereign immunity with regard to these actions, the court does not have jurisdiction to hear this case. *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953).

■ In response to this argument, the plaintiff again argues that the defendant was negligent is its refusal to issue a certificate of registration. The plaintiff contends that the FAA had no information that Ligon "Air," via the "880 Partnership" had acquired the plane through repossession when it refused to issue the certificate to Koppie. Therefore, the plaintiff continues, it was mandatory, and not discretionary, for the FAA to issue the certificate to Koppie. This fails to address the necessary question of whether the nature of the action (issuing certificates of registration) is of the type that Congress intended to be shielded from tort liability. *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). Moreover, even if the FAA acted in a negligent manner, or even if their behavior constituted a gross abuse of discretion, sovereign immunity is not waived if the agency is performing a discretionary function. *See In re Agent Orange Product Liability Litigation,* 818 F.2d 210 (2d Cir.1987) *cert. denied sub nom., Fraticelli v. Dow Chemical Co.,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988); *Barnson v. United States,* 816 F.2d 549 (10th Cir.) *cert. denied,* 484 U.S. 896, 108 S.Ct. 229, 98 L.Ed.2d 188 (1987); *Aslakson v. United States,* 790 F.2d 688 (8th Cir.1986).

■ The discretionary function exception was designed to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Varig Airlines,* 467 U.S. at 814, 104 S.Ct. at 2765. The Supreme Court has set out specific guidelines for courts to use in determining whether a government action falls under the discretionary function exception. *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). The court must decide whether the employee's action is a matter of choice, and also whether the judgment the employee must make is of the type that was intended to be protected by the exception. *Id.* at 536, 108 S.Ct. at 1958. As to the second question,

---

**5.** 28 U.S.C. § 2680 provides in pertinent part that:

  The provisions of this chapter and section 1346(b) of this title shall not apply to—

    (a) Any claim based upon the act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

the court has stated that administrative decisions grounded in social, economic, or political policy are shielded. *Id.* at 537, 108 S.Ct. at 1959 (quoting *Varig Airlines,* 467 U.S. at 813, 104 S.Ct. at 2764).

The Supreme Court again addressed the discretionary exception in *United States v. Gaubert,* 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), where the Court rejected the Fifth Circuit's distinction between "policy decisions" and "operational actions." The court stated there, with regard to the daily investment decisions made by government regulators of a savings and loan, that "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies that led to the promulgation of the regulations." *Id.,* 499 U.S. at 324, 111 S.Ct. at 1274.

In response, the plaintiff cites some case law where courts have determined that certain actions performed by the FAA fell outside the discretionary function exception. However, the plaintiff makes only a slight effort to show how these actions relate to certification or how decisions surrounding the issuance of certificates of registration by the FAA are not discretionary.

The plaintiff cites *Arney v. United States,* 479 F.2d 653 (9th Cir.1973) for the proposition that the exception is not applicable to the improper issuance of airworthiness certificates. However, as the defendant pointed out in its Reply Brief, the Supreme Court has held that this function *is* shielded by the discretionary function exception. *See Varig Airlines,* 467 U.S. at 820, 104 S.Ct. at 2768.

The plaintiff also cites *Hayes v. United States,* 899 F.2d 438 (5th Cir.1990), where the court found that the discretionary function exception was not applicable. That case, however, based upon the negligence of a flight examiner in allowing a pilot to repeat a maneuver which resulted in a plane crash, is distinguishable from the instant case. In *Hayes,* the flight examiner had specific regulations, orders, procedures, and policies which dictated what his conduct should have been in that situation. *See Hoffman v. United States,* 398 F.Supp. 530, 539 (E.D.Mich.

1975) (stating that the court's finding that the exception did not apply would be different "if the regulation was not as specific and thus gave the FAA discretion in its application.")

In addition, the Fifth Circuit's characterization of the act in *Hayes* as a "day-to-day operational function" has since been rejected by the Supreme Court as a legitimate distinguishing characteristic. "If the routine or frequent nature of a decision were sufficient to remove an otherwise discretionary act from the scope of the exception, then countless policy-based decisions by regulators exercising day-to-day supervisory authority would be actionable. This is not the rule of our cases." *Gaubert,* 499 U.S. at 334, 111 S.Ct. at 1279. This eliminates the plaintiff's contention that it is material that certification is a "day-to-day operational function," but the plaintiff's other contention that certification is not policy related at all must still be addressed.

■ To decide whether certification is a discretionary function, this court must determine whether the process of issuing of a certificate of registration requires the examiner to make a choice, and then whether the choice he makes is grounded in public policy. *Gaubert,* 499 U.S. at 321–24, 111 S.Ct. at 1273–74 (citations omitted). Under 14 C.F.R. § 47.5(c), when a conflict exists concerning the ownership of a particular aircraft, the examiner must make a determination, based upon the documents he has before him and the applicable law, as to which is the superior claim. The statute, 49 U.S.C.App. § 1401, which allows for the FAA to register "eligible" aircraft "owned" by citizens does not define these terms, and when a conflict exists, the examiner must exercise his discretion in determining whether the applicant owns the plane and whether the aircraft is eligible.

■ The second question is whether the decisions are policy-based. The policy behind registration is to insure that the FAA is able to identify properly the owners of aircraft. This is explicit under the statute. A controlling policy may also be set forth through adjudicatory proceedings. *Gaubert,*

499 U.S. at 323–24, 111 S.Ct. at 1274. Here, the courts have found that title documents must be examined under the applicable state law, supporting the policy that registration is only for identification purposes. In furtherance of these policies, the examiner, when faced with competing claims as to ownership, must make a judgment as to the applicable law, and under that law, which is the superior claim. Since Congress' intent was to create a "central clearing house for recordation of titles," *Braniff*, 819 F.2d at 1231, the purpose would be thwarted if the FAA did not make a discretionary determination as to who is the owner of the aircraft.

Koppie's application for registration was treated in just this way. The examiner, Bill Ferguson, upon discovering the conflict, consulted with R. Bruce Carter, an attorney-advisor for the FAA, about the request. Upon examination of the records, and in light of the applicable law, Carter determined that Koppie took his interest in the aircraft subject to the recorded interest of Cromwell State Bank, dated April 7, 1982. Since FAA records showed that Cromwell assigned its interest to "880 Partnership," which repossessed the aircraft and sold it to Ligon "Air," Ferguson denied Koppie's application. (Declaration of R. Bruce Carter ¶¶ 2–5).

The nature of the inquiry necessarily requires that the examiner and the staff attorneys exercise their discretion in interpreting the laws of the different states in order to fulfill the policy behind a national registration system. Because of this, the conduct of the FAA examiners, in deciding whether to issue a certificate of registration, is of the nature Congress intended to shield from liability, and is therefore protected under the discretionary function exception to the FTCA. Since the action falls under the exception, this court does not have jurisdiction to hear this case, and judgment should be entered for the defendant on this basis.

### 3. *Collateral Estoppel*

The defendant's third argument is that this court, in granting the defendant, Ligon "Air" 's Motion for Summary Judgment, has already determined that the plaintiff released any interest he might have had in the Convair aircraft before he brought this suit, and

therefore, cannot maintain a cause of action for conversion. In response, the plaintiff has attacked the court's previous order granting summary judgment to Ligon "Air" and is requesting that the court overrule itself.

The plaintiff has made some rather non-specific allegations of error regarding this court's decision in the Ligon "Air" summary judgment order and the court will attempt to summarize them as follows: (1) that the court made incorrect findings of fact which were not based upon evidence in the record; (2) that the court ignored the uncontradicted sworn testimony of Koppie and Potter that Koppie did not release Ligon "Air" or the FAA from any liability; (3) that the court decided wrongly that neither Hudson General nor Koppie had legal title to the Convair; (4) that the court also decided wrongly that there was a "new agreement" between Potter and Koppie which attempted to rescind the earlier release; and (5) that the court erred in stating that Potter had no interest in the Convair to transfer back to Koppie.

▉ As to these allegations, in the Order granting Ligon "Air" Summary Judgment, the court's findings of fact were supported by the record, and the plaintiff has not demonstrated to this court that there were any errors in this regard. The plaintiff contends that the court's legal finding that Koppie released any and all interest he may have acquired in the Convair is incorrect; however, the court's finding is, in fact, supported by the document itself. As the court has stated, "[t]he July 7, 1987 agreement, Exhibits 26 and 27 to Koppie's deposition, is one of the clearest contracts this court has seen in a long time, and is clearly unambiguous." *Koppie v. Busey*, No. F89–282 (N.D.Ind. Dec. 11, 1991) (order granting summary judgment) at 7–8. If a contract is clear and unambiguous, the language of the contract must be given its plain meaning. *Sharp v. Indiana Union Mutual Ins. Co.*, 526 N.E.2d 237, 239 (Ind.App.1988). Therefore, the plaintiff's second contention of error is also without merit.

The plaintiff's assertion that this court wrongly held that neither Hudson General nor Koppie had a superior interest in the

plane is without foundation since the court did not decide this issue. Who in fact did have the superior claim is immaterial since the court found that Koppie had made a valid release of any interest (inferior or otherwise) he may have had in the plane.

The final two allegations of error concern the "new agreement" which attempted to rescind all earlier agreements between Koppie and Potter. This court found that Potter had not been shown to have had any interest that he could have transferred back to Koppie. This finding is supported by the record and the May 16, 1991 agreement which stated that neither Potter nor Western Continental Holdings had any interest in the plane. Koppie, therefore, by this court's own finding, has no interest which could have been converted, and, therefore, has not, and could not have been damaged by any actions taken by the defendant, FAA.

Since the court's decision granting Ligon "Air" summary judgment was correct, the court must determine whether the plaintiff is collaterally estopped from relitigating the release issue. The Seventh Circuit has stated that "once an issue is actually and necessarily decided by a court, that determination is conclusive in a subsequent suit on a different cause of action that involves a party to the earlier litigation." *Schellong v. United States Immigration & Naturalization Serv.*, 805 F.2d 655, 658 (7th Cir.1986) *cert. denied*, 481 U.S. 1004, 107 S.Ct. 1624, 95 L.Ed.2d 199 (1987). Collateral estoppel is appropriate when the following elements are present: (1) the party against whom estoppel is asserted must have been fully represented in the prior litigation; (2) the issue sought to be precluded must be identical to an issue involved in the prior litigation; (3) the issue must have been actually litigated and decided on the merits in the prior litigation; and (4) the resolution of that issue must have been necessary to the court's judgment. *Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir.1989) (*citing Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987) and *County of Cook v. Midcon Corp.*, 773 F.2d 892, 989 (7th Cir. 1985)).

With regard to those elements, Koppie was fully represented during the Ligon "Air" summary judgment motion. The issue sought to be precluded (whether Koppie had any interest that could have been damaged) is the identical issue that was already decided by the summary judgment, and that issue was decided on the merits. Further, the fact that Koppie had made a full and valid release was the basis for granting Ligon "Air" summary judgment. In light of these facts, the court finds that the plaintiff has had a "full and fair opportunity" to litigate the issue previously, and since the plaintiff has already fully litigated this issue, it is appropriate to bar the relitigation of it now. *Blonder–Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Avitia v. Metropolitan Club of Chicago Inc.*, 924 F.2d 689 (7th Cir.1991) (*citing Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 480, 102 S.Ct. 1883, 1896, 72 L.Ed.2d 262 (1982)).

As the court has previously held, any interest Koppie may have had was released by the two documents signed on July 7, 1987. He therefore had no interest for the FAA to convert or otherwise damage.

*Conclusion*

For the aforesaid reasons, the defendant's Motion for Summary Judgment is hereby GRANTED, and the plaintiff shall take nothing from the defendant. The clerk is directed to enter judgment for the defendant and against the plaintiff.